ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| LUIS VÉLEZ VÉLEZ<br><br>APELADO<br><br><br>V.<br><br><br><br>GERSON QUIÑONES,<br>ET AL.<br><br>APELANTES | TA2026AP00321 | Apelación procedente del Tribunal de Primera Instancia, Sala de Caguas<br><br>Caso Núm. SJ2022CV08099<br><br>Sobre:<br>Injunction (Entredicho Provisional, Injunction Preliminar y Permanente), Sentencia Declaratoria |
|---|---|---|

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz, y la juez Aldebol Mora

**Brignoni Mártir, Juez Ponente**

## SENTENCIA

En San Juan, Puerto Rico, a 19 de mayo de 2026.

Comparecen Gerson Quiñones, (señor Quiñones) María Velázquez y la Sociedad Legal de Gananciales compuesta por ambos (en conjunto los esposos Quiñones-Velázquez o los apelantes) y solicitan la revocación de la Sentencia emitida y notificada el 25 de febrero de 2026, -por el Tribunal de Primera Instancia, Sala de San Juan, ( TPI o foro primario). Mediante la referida Sentencia, el foro primario declaró *Ha Lugar* la *Moción Solicitando Sentencia Sumaria*, presentada el 2 de octubre de 2025 por Luis Vélez Vélez (señor Vélez Vélez o el apelado); ordenó el corte y remoción del árbol *Pterocarpus Indicus* objeto de la controversia, siguiendo el proceso de permisos y reglamentación establecidos por el Departamento de Recursos Naturales y Ambientales e impuso a los apelantes el pago de la suma de $1,500.00 de honorarios de abogado por concepto de temeridad.

Por los fundamentos que expondremos a continuación, confirmamos la Sentencia apelada.

**I.**

Los hechos que motivan la presentación del recurso de epígrafe se remontan al 8 de septiembre de 2022, fecha en que el señor Vélez Vélez

presentó Demanda, en contra de los apelantes, en la que solicitó interdicto preliminar y permanente para la intervención con un árbol en el patio que colinda con su propiedad y daños.[1] En apretada síntesis, el señor Vélez Vélez alegó que es dueño de un inmueble que colinda por la parte trasera con dos inmuebles pertenecientes a los esposos Quiñones-Velázquez y que en dichas propiedades ubica un árbol de la especie *Pterocarpus Indicus,* de gran tamaño, que descarga gran cantidad de hojas, ramas y basura orgánica en el patio de su propiedad.[2] Asimismo, apuntó que en esta área existe una piscina cuyo sistema de filtración ha sufrido daños y le ha impedido su uso y disfrute. Sobre estos extremos, el apelado indicó que anteriormente había presentado una reclamación que culminó en un acuerdo de transacción judicial en el caso Civil Núm. K DP 2011-1483, que incluyó el compromiso de mantener el árbol podado por un profesional certificado y el pago de una suma de $10,000.00 por concepto de daños.[3] A tales efectos, el señor Vélez Vélez alegó que toda vez que los esposos Quiñones-Velázquez incumplieron el acuerdo objeto de la transacción judicial,  la situación no fue resuelta.

El 18 de octubre de 2022, los esposos Quiñones-Velázquez presentaron una Moción de Sentencia Sumaria. Adujeron que la Demanda presentada por el señor Vélez Vélez era cosa juzgada toda vez que en el año 2010 el señor Vélez Vélez presentó una demanda en contra de ellos por los mismos hechos y remedio solicitado, la cual dieron por concluida por medio de una transacción judicial y el pago de una indemnización por los alegados daños, por lo que procedía desestimar la causa de acción por constituir cosa juzgada.[4] Acto seguido, mediante *Resolución* de 21 de mayo de 2025, el foro primario declaró No Ha Lugar la solicitud de sentencia sumaria de los esposos Quiñones-Velázquez.[5]

---

[1] *Véase* Entrada Núm. 1 de SUMAC TPI en el caso Civil Núm. SJ2022CV08099.
[2] *Id.*
[3] *Id.*
[4] *Véase* Entrada Núm. 13 de SUMAC TPI en el caso Civil Núm. SJ2022CV08099
[5] *Véase* Entrada Núm. 46 de SUMAC TPI en el caso Civil Núm. SJ2022CV08099

Tras varios incidentes procesales, el 2 de octubre de 2025, el señor Vélez Vélez presentó *Moción Solicitando Sentencia Sumaria.*[6] Conforme a la prueba documental sometida, el señor Vélez Vélez expuso ante el foro primario los siguientes hechos incontrovertidos:

1. En el caso anterior entre las partes, el KDP2011-1483, los demandados presentaron al tribunal un informe pericial del año 2013, también sometido como evidencia en el presente caso, suscrito por el biólogo Agustín Lizardi Rodríguez, el cual concluye que "Todos los árboles de Puerto Rico están protegidos por leyes y reglamentos. La eliminación de un árbol sólo se justifica si éste representa un riesgo a la propiedad o a la vida. Este no es el caso ya que este árbol no ha presentado riesgo a la vida. Tampoco se desprende de la demanda alguna reclamación de que esté causando daño estructural ni al demandado ni al demandante." Esta conclusión es de 13 de agosto de 2013.

2. El 17 de mayo de 2021 la Oficina de Planificación y Ordenación Territorial del Municipio Autónomo de San Juan emitió una reconsideración a un comentario de dicha oficina respecto al caso que nos ocupa en el cual adoptan las conclusiones de un informe anterior, 2 de noviembre de 2010, del DRNA donde se recomienda la remoción del árbol por entender que el mismo representa un peligro para las partes, que está sembrado en un espacio muy reducido de 15 a 20 pies aproximado entre las colindancias, que el mismo sufrió una poda incorrecta que afectó la integridad estructural del árbol y que dicho árbol tiene unas dimensiones demasiado grandes para el espacio donde fue ubicado. Dicho comentario fue reiterado por la citada oficina el 8 de febrero de 2023.

3. El 24 de marzo de 2022 el señor José I Rivera Giboyaux, Biólogo III del Negociado de Áreas Naturales Protegidas y Servicios Forestales del Departamento de Recursos Naturales y Ambientales del Gobierno de Puerto Rico sometió, por orden de la Honorable Juez Alfrida M. Tomey en el caso SGL 140-2022-2195,9 un informe sobre una visita del Biólogo a la residencia de los demandados para examinar la situación del árbol en controversia.

4. De la visita de inspección y evaluación el Biólogo de Recursos Naturales concluye entre otras cosas:

a. El árbol está localizado a una distancia de entre 36 y 48 pulgadas de la verja de colindancia, o sea, menos de los dos metros que exige el Artículo 809 del Código Civil y tiene entre 35 y 40 pies de altura con una copa de aproximadamente 40 pies.

b. Producto de malas prácticas de poda, así como el impacto de eventos naturales como tormentas y/o huracanes hacen del árbol un riesgo para los residentes de la propiedad y los residentes vecinos a la misma.

c. El árbol está muy afectado estructuralmente como resultado de las podas inadecuadas realizadas para mantener el control de su extensión hacia la propiedad del demandante creando su mutilación, malformación y desbalance desproporcionado de la copa creando tensión hacia la base y sus raíces.

d. "Mantener el árbol en este lugar resultaría incrementar el riesgo de daño a vida y/o propiedad además de los gastos considerables de mantenimiento de insistir en mantener el

---

[6] *Véase* Entrada Núm. 51 de SUMAC TPI en el caso Civil Núm. SJ2022CV08099.

mismo en el lugar por lo que no recomendamos que se conserve, además de estar a una distancia no permitida. Ver los artículos Núm. 800, 809, 810, 811, 812 del Código Civil de 2020 de Puerto Rico, según enmendado."

e. Finalmente "Recomendaciones- Por lo antes expuesto, recomendamos que este árbol sea cortado y de ser posible, su base removida o envenenada para evitar que se regeneren nuevos brotes que vayan a incrementar los riesgos de daños que se presentan actualmente."

f. Se propone como medida de mitigación la siembra de dos árboles frutales o dos ornamentales con propuestas específicas al respecto.

5. El 3 de marzo de 2023 el biólogo William Ortiz Carrasquillo suscribió otro informe sobre la situación del árbol reiterándose en una opinión suya de 5 de septiembre de 2013 coincidiendo con los informes del DRNA.[7]

En su *Moción Solicitando Sentencia Sumaria* el señor Vélez Vélez advirtió además, que el único asunto en controversia en el caso era si procedía ordenar que el "árbol sea cortado y de ser posible, su base removida o envenenada para evitar que se regeneren nuevos brotes que vayan a incrementar los riesgos de daños que se presentan actualmente".[8] Añadió que según concluido por el biólogo del DRNA, entendía que ello procedía por la condición del árbol y por el peligro que representa para los vecinos, además de encontrarse a menos de los dos metros de la colindancia, distancia que exige el Artículo 809 del Código Civil. [9] De igual forma, el señor Vélez Vélez le solicitó al foro primario que ordenara el corte y remoción del árbol, y que concediera honorarios de abogado con intereses por concepto de temeridad, desde la radicación de la demanda hasta la ejecución de la sentencia.[10]

En respuesta, el 27 de octubre de 2025, los esposos Quiñones-Velázquez" presentaron *Oposición a Moción Solicitando Sentencia Sumaria de Parte Demandante.[11]* En esencia sostienen que la alegación de que no se hicieron las podas acordadas es falsa; que el árbol objeto de la demanda se encuentra a una distancia de la colindancia entre las partes que excede lo establecido en los reglamentos y leyes aplicables; y que el

---

[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Véase* Entrada Núm. 57 de SUMAC TPI en el caso Civil Núm. SJ2022CV08099

señor Vélez Vélez transigió toda reclamación presente y futura en cuanto al referido árbol, por lo que la presente causa de acción es cosa juzgada.[12]

En síntesis, la parte apelante señaló que está en controversia si estos cumplieron o no con las podas acordadas y si debe o no ordenarse el corte del árbol *Pterocarpus.* Arguyeron además, que el apelado carece de una causa de acción, toda vez que este transigió toda reclamación anterior y futura con relación al árbol a cambio de una cantidad dineraria, la cual recibió.[13]

Mediante *Sentencia* emitida y notificada el 25 de febrero de 2026, el foro primario declaró *Ha Lugar* la la *Moción Solicitando Sentencia Sumaria*, presentada el 2 de octubre de 2025 por el señor Vélez Vélez.[14] En dicha Sentencia el TPI como incontrovertidos los siguientes hechos:

### HECHOS QUE NO ESTÁN EN CONTROVERSIA

1. El 14 de abril de 2011, el Biólogo Agustín Lizardi Rodríguez, Consultor Ambiental, Profesional de Siembra y Forestación certificado por el DRNA, emitió una Certificación.

2. El 16 de mayo de 2011, la Agrónoma Nivia Cardona Nieves de la división de Manejo de Árboles del DRNA, estableció un plan de poda (O-R7-PMA01-SJ-04917-25032011) mediante el cual recomendó que las podas sean realizadas por un Arbolista Certificado.

3. El 28 de julio de 2011, el Biólogo Agustín Lizardi Rodríguez, emitió una Certificación Profesional de Siembra y Forestación.

4. El 14 de diciembre de 2011, Vélez Vélez presentó una demanda en contra de los esposos Quiñones-Velázquez, caso civil núm. K DP2011-1483.

5. En la Demanda, caso civil núm. K DP2011-1483, Vélez Vélez alegó que en el patio de los esposos Quiñones-Velázquez ubica un árbol dentro del área prohibida, que causaba acumulación de hojas y que su permanencia allí le ocasionaba daños continuos a la propiedad, a su disfrute y angustias emocionales.

6. El 13 de agosto de 2013, el Biólogo Lizardi Rodríguez, emitió una Evaluación Pericial de Siembra y Forestación.

7. El 12 de marzo de 2014, Vélez Vélez y los esposos Quiñones-Velázquez llegaron a una transacción mediante un Acuerdo Privado, Confidencial y Relevo General, donde Vélez Vélez acordó desistir con perjuicio de la Demanda en el caso civil núm. K DP2011 1483.

8. En la cláusula 1 del Acuerdo Privado, Confidencial y Relevo General, en su parte pertinente, las partes acordaron lo siguiente:

---

[12] *Id.*
[13] *Id.*
[14] *Véase* Entrada Núm. 59 de SUMAC TPI en el caso Civil Núm. SJ2022CV08099

Las partes aquí comparecientes han acordado transigir la reclamación instada por la parte demandante, en su totalidad en el caso de epígrafe, seguido ante el Honorable Tribunal de Primera Instancia de San Juan, Puerto Rico, por la cantidad total de (Cuantía Confidencial), cuya cantidad acepta la parte demandante como resarcimiento total de todos los daños a la propiedad sufridos por dicha parte como consecuencia de los hechos que se describen en la Demanda, así como por todos los sufrimientos y angustias mentales alegados en dicha Demanda y todos aquellos daños a la propiedad y aquellas angustias y sufrimientos mentales que hubiera sufrido o que pudiera en lo sucesivo sufrir como consecuencia de dichos incidentes[…]. Específicamente se hace formar parte de este Acuerdo Privado Confidencial y Relevo General, el hecho de que por la aportación de (Cuantía Confidencial) se están transigiendo todas y cada una de las causas de acción de la parte demandante en contra de los codemandados Gerson Quiñone[s] y María Velázquez, así como la Sociedad Legal de Bienes Gananciales compuesta por ambos, su aseguradora […] relacionados a los daños a la propiedad y a los sufrimientos y angustias mentales reclamados en la demanda y aquellos que pudieran surgir con posterioridad a la presente transacción. (Énfasis suplido.)

9. En la cláusula 2 del Acuerdo Privado, Confidencial y Relevo General, en su parte pertinente, las partes acordaron lo siguiente:

Las partes han acordado además, que forma parte esencial de este Acuerdo Privado Confidencial y Relevo General, el hecho de que la parte demandante acepta y entiende que por la cantidad total de (Cuantía Confidencial) han transigido con perjuicio todas y cada una de sus causas de acción pasadas, presentes y futuras contra las partes demandadas aquí comparecientes, su aseguradora […], en relación con todos los incidentes objeto de la Demanda, por concepto de todos los daños a la propiedad sufridos por dicha parte como consecuencia de los hechos que se describen en la Demanda, cualquier daño físico o angustias mentales pasadas, presentes o futuras del demandante, de daños físicos o angustias mentales heredados por la parte demandante […]. (Énfasis nuestro.)

10. En la cláusula 3 del Acuerdo Privado, Confidencial y Relevo General, en su parte pertinente, las partes acordaron lo siguiente:

La parte demandante se da totalmente por resarcida, en su reclamación contenida en este caso y de toda otra reclamación resultante de las alegaciones esbozadas en la demanda, por la presente releva con perjuicio a las parte demandada aquí comparecientes y su aseguradora[…] de toda responsabilidad en cuanto a cualquier reclamación, demanda, causa de acción, daños, suma de dinero, obligación o derechos que puedan tener en el presente, que podrían haber tenido en el pasado, y que pudieran tener en el futuro como resultado de los incidentes relatados en la Demanda, por daños y perjuicios: daños a la propiedad y aquellas angustias y sufrimientos mentales que hubiera sufrido o que pudiera en lo sucesivo sufrir como consecuencia de dichos incidentes […]. (Énfasis suplido.)

11. En la cláusula 4 del Acuerdo Privado, Confidencial y Relevo General, en su parte pertinente, las partes acordaron lo siguiente:

La parte demandante manifiesta su deseo de no litigar nuevamente los asuntos planteados o que pudieron razonablemente haberse planteado en la demanda de epígrafe. (Énfasis suplido.)

12. En la cláusula 8 del Acuerdo Privado, Confidencial y Relevo General, en su parte pertinente, las partes acordaron lo siguiente:

Para que la presente surta todo su efecto, la Parte Demandante habrá de presentar Desistimiento Voluntariamente de su acción legal ante el Tribunal de Instancia Con Perjuicio, convirtiéndose la presente estipulación privada y la ley entre las partes y por medio de la misma, solicitará que la Sentencia sea final, firme e inapelable desde el momento en que se dicte […]. (Énfasis suplido.)

13. En cumplimiento con lo acordado, el 25 de marzo de 2014, Vélez Vélez presentó una Solicitud de Desistimiento con Perjuicio por Transacción en el caso civil núm. K DP2011-1483.

14. El 9 de abril de 2014, el Tribunal de Primera Instancia, Sala Superior de San Juan, notificó una Sentencia de Archivo por Desistimiento con perjuicio, dando por desistida la Demanda que presentó Vélez Vélez, en el caso civil núm. K DP2011-1483.

15. El 17 de mayo de 2021, la Oficina de Planificación y Ordenación Territorial del Municipio Autónomo de San Juan reconsideró los comentarios vertidos en comunicación emitida el 28 de mayo de 2013 sobre un árbol de Pterocarpus Indicus, y le dio deferencia a las conclusiones emitidas por el Departamento de Recursos Naturales y Ambientales quienes manifestaron lo siguiente:

[…] se recomienda la remoción del árbol en cuestión por entender que el mismo representa un peligro para las partes. Entre los aspectos analizados se encuentra que el árbol que está sembrado en un espacio muy reducido de 15 a 20 pies aproximadamente entre las colindancias, que el mismo sufrió una poda incorrecta que afectó la integridad estructural del árbol y que dicho árbol tiene unas dimensiones demasiado grandes para el espacio donde fue ubicado.

16. El 17 de marzo de 2022, el Biólogo José I. Rivera Giboyeaux realizó una visita de inspección por Orden de la Hon. Alfrida M. Tomey Imbert. Como resultado se obtuvo los siguientes datos:

* Un árbol de Pterocarpus Indicus sembrado en la parte posterior de la propiedad residencial de los esposos Quiñones-Velázquez.

* Localizado a distancia de treinta y seis a cuarenta y ocho pulgadas (~36"-48") de la verja de colindancia que separa la propiedad de los esposos Quiñones- Velázquez y Vélez Vélez, menor a los dos metros (<36"- 48") de la verja de colindancia que separa la propiedad de los esposos Quiñones-Velázquez y Vélez Vélez, menor a los dos metros (<2m) permitidos según establece el Código Civil de Puerto Rico, como distancia mínima para la siembra de árbol cercano a una colindancia.

* El árbol tiene entre treinta y cinco a cuarenta pies (~35'-48') de altura y un ancho de copa de aproximadamente cuarenta pies (~40') cuyas ramas se mantienen mayormente sobre la propiedad de los esposos Quiñones Velázquez.

* El árbol está muy afectado estructuralmente como resultado de las podas inadecuadas realizadas para mantener el control de su extensión hacia la propiedad del demandante. Esto debería haberse realizado con herramientas adecuadas para evitar su mutilación, malformación y desbalance desproporcionado actual de su copa sobre la residencia que aumenta la tensión sobre la base del tronco y sus raíces resultando en un crecimiento de raíces de anclaje más extendidas y/o profundas hacia la colindancia trasera que pudieran profundizar bastante y entrar al terreno del Vélez Vélez en respuesta el crecimiento de ramas extendidas sobre la propiedad en diferentes momentos de los pasados años.

* Las ramas que conforman su copa son producto de una mala estructura resultante de traumas causados por malas prácticas de poda, impacto de eventos naturales como tormentas y/o huracanes que hacen de este árbol un riesgo para los residentes de la propiedad y los residentes vecinos inmediatos al área D7 (Vélez Vélez), D6, D14 y D15.

* Mantener el árbol en este lugar resultaría incrementar el riesgo de daño a vida y/o propiedad además de los gastos considerables de mantenimiento de insistir en mantener el mismo en el lugar por lo que no recomendamos que se conserve, además de estar a una distancia no permitida. Ver los artículos núm. 800, 809, 810, 811, 812 del Código Civil de 2020 de Puerto Rico, según enmendado.

* Por lo antes expuesto, recomendamos que este árbol sea cortado y de ser posible, su base removida o envenenada para evitar que se regeneren nuevos brotes que vayan a incrementar los riesgos de daños que se presentan actualmente.

* Es requerido como medida de mitigación y para velar por las funciones eco ambientales aportadas por la vegetación a ser cortada, la siembra de dos árboles frutales o dos árboles y/o palmas ornamentales o la combinación de ambos de las siguientes especies y a las distancias permitidas por lo establecido en el Art. 809, 810 y 1541 (c) y (e) del Código Civil de Puerto Rico, según enmendado.

17. El 8 de septiembre de 2022, Vélez Vélez presentó la Demanda de epígrafe, caso civil núm. SJ2022CV08099, en contra de los esposos Quiñones-Velázquez.

18. El 8 de febrero de 2023, el Departamento de Recursos Naturales y Ambientales, emitió una comunicación ratificando la posición del Municipio Autónomo de San Juan emitida el 17 de mayo de 2021.

19. El 3 de marzo de 2023, el Biólogo William Ortiz Carrasquillo suscribió otro informe sobre el árbol de Pterocarpus Indicus por medio del cual expresó que coincide con las recomendaciones de los informes emitidos por el DRNA, y reitera su recomendación del 5 de septiembre de 2013, sobre la remoción del árbol.

20. El árbol de Pterocarpus Indicus ubicado en la propiedad de los demandados claramente está ubicado dentro de una distancia no permitida por nuestro ordenamiento jurídico.

Conforme a las anteriores determinaciones de hechos incontrovertidos, el foro primario concluyó que las partes habían iniciado un pleito ante el tribunal, en el Caso Civil Núm. K DP2011-1483, al que

eventualmente decidieron ponerle fin llegando a un acuerdo privado entre estos y que al ser dicho acuerdo transaccional pactado entre los esposos Quiñones Velázquez y el señor Vélez Vélez, un acuerdo privado, el tribunal podía entrar a dirimir si se incumplió con lo pactado. **Concluyó el TPI que a pesar de que las partes pactaron un acuerdo transaccional, el tribunal tenía potestad para dirimir su cumplimiento.** Sobre estos extremos, el foro primario **concluyó que el árbol Pterocarpus Indicus se encuentra a una distancia de la colindancia menor a la permitida por ley; que los esposos Quiñones-Velázquez no llevaron a cabo las podas recomendadas en el informe; y que el árbol de Pterocarpus Indicus representa un peligro para las partes.** De igual forma, el TPI concluyó que los esposos Quiñonez-Velázquez incurrieron en temeridad ya que hicieron necesario un pleito que se pudo evitar, y prolongaron innecesariamente el asunto de la poda, lo que causó que Vélez Vélez incurriera en gestiones evitables.

Inconformes, los apelantes presentaron el recurso de epígrafe y señalan la comisión de los siguientes errores por parte del foro primario:

1. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE EL "ACUERDO PRIVADO, CONFIDENCIAL Y RELEVO GENERAL" SUSCRITO ENTRE LAS PARTES EN E L CASO K DP2011-1483 NO LE APLICA LA DOCTRINA DE COSA JUZGADA.

2. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE LA PARTE DEMANDADA-APELANTE INCUMPLIÓ CON EL "ACUERDO PRIVADO CONFIDENCIAL Y RELEVO GENERAL" SUSCRITO ENTRE LAS PARTES EN EL CASO K DP2011-1483.

3. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL IMPONER LA SUMA DE $1,500.00 EN HONORARIOS DE ABOGADO POR TEMERIDAD A PESAR DE QUE NO HA INCUMPLIDO CON EL "ACUERDO PRIVADO, CONFIDENCIAL Y RELEVO GENERAL "Y QUE QUIEN HA INCUMPLIDO CON ESTE HA SIDO LA PARTE DEMANDANTE-APELADA.

4. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DICTAR SENTENCIA BASADO EN LA SOLICITUD DE SENTENCIA SUMARIA DE LA PARTE DEMANDANTE-APELADA A PESAR DE QUE LOS HECHOS MEDULARES DEL CASO FUERON CONTROVERTIDOS.

Por su parte, el señor Vélez Vélez compareció ante nos el 8 de mayo de 2026 mediante *Oposición a Apelación.* [15] En esencia, sostiene el apelado, que no se puede aplicar la doctrina de cosa juzgada ni erró el TPI al determinar que los apelantes incumplieron sus obligaciones en el "Acuerdo Privado, Confidencial y Relevo General" suscrito por las partes en el caso anterior. Arguye el señor Vélez Vélez que una vez el foro primario entendió probado por el informe del DRNA, unido a la evidencia documental en la forma de fotos del área y la colindancia, que la posición del árbol no cumple con la distancia de dos metros de la colindancia requerida por el Artículo 809 del Código Civil, la discusión sobre la validez de acuerdos privados y confidenciales se hace innecesaria e impertinente. Finalmente, sostiene que la actitud contumaz de los apelantes de incumplir con la obligación contraída anteriormente de dar mantenimiento al árbol, lo obligó a presentar un pleito que se pudo evitar.

**II.**

**A.    La Sentencia Sumaria**

La Regla 36.1 de Procedimiento Civil autoriza a los tribunales a dictar sentencia de forma sumaria si mediante declaraciones juradas u otro tipo de prueba se demuestra la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. 32 LPRA Ap. V, R. 36.1. De proceder este mecanismo discrecional se aligeraría la tramitación de un caso, pues el tribunal solo tendría que aplicar el derecho. *Oriental Bank v. Perapi et al.*, 192 DPR 7, 25 (2014); *Ramos Pérez v. Univisión*, 178 DPR 200, 213-214 (2010).

Al respecto, el Tribunal Supremo de Puerto Rico expresó que:

Una controversia no es siempre real o sustancial, o genuina. La controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario. La fórmula, debe ser, por lo tanto, que la moción de sentencia sumaria adecuadamente presentada solo puede negarse si la parte que se opone a ella presenta una oposición basada en hechos que puedan mover a un juez a resolver a su favor. Si el juez se convence de que no existe una posibilidad de que escuchar lo que lee no podrá a conducirlo a una decisión a favor de esa parte, debe dictar sentencia sumaria. *Ramos Pérez v. Univisión Puerto Rico*, supra, págs. 213-214.

---

[15] *Véase* Entrada Núm. 3 de SUMAC TA.

Por lo tanto, procede dictar sentencia sumaria si "las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia si las hubiere, acreditan la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y pertinente y, además, si el derecho aplicable así lo justifica." *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 225 (2015), *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013). Por el contrario, no es "aconsejable utilizar la moción de sentencia sumaria en casos en donde existe controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor credibilidad es esencial y está en disputa." *Ramos Pérez v. Univisión*, supra, pág. 219. Este mecanismo está disponible para la disposición de reclamaciones que contengan elementos subjetivos únicamente cuando no existan controversias de hechos esenciales y pertinentes. *Rodríguez García v. UCA,* 200 DPR 929 (2018), *Velázquez Ortiz v. Mun. de Humacao*, 197 DPR 656, 661 (2017), *Reyes Sánchez v. Eaton Electrical*, 189 DPR 586, 594-595 (2013), *Const. José Carro v. Mun. Dorado*, 186 DPR 113 (2012); *Ramos Pérez v. Univisión Puerto Rico*, supra; *Abrams Rivera v. ELA y otros*, 178 DPR 914 (2010).

Por otra parte, es esencial reconocer que la Regla 36 de las de Procedimiento Civil, 32 LPRA Ap. V, R.36, establece de manera específica los requisitos de forma que debe cumplir la parte que promueve la moción de sentencia sumaria, así como la parte que se opone a ella. En lo pertinente, la parte promovente debe exponer un listado de hechos no controvertidos, desglosándolos en párrafos debidamente numerados y, para cada uno de ellos, especificar la página o el párrafo de la declaración jurada u otra prueba admisible que lo apoya. A su vez, la parte que se opone a la moción de sentencia sumaria está obligada a citar específicamente los párrafos según enumerados por el promovente que entiende están en controversia y, para cada uno de los que pretende controvertir, detallar la evidencia admisible que sostiene su impugnación

con cita a la página o sección pertinente. *Meléndez González, et al. v. M. Cuebas*, 193 DPR 100 (2015), *SLG Zapata Rivera, v. J.F. Montalvo*, supra. De este modo, "[s]e facilita ... el proceso adjudicativo al poner al tribunal en posición de evaluar conjuntamente las versiones encontradas para cada uno de los hechos refutados a la luz de las referencias a la prueba que alegadamente los apoya. Este sistema claramente agiliza la labor de los jueces de instancia y propende la disposición expedita de aquellas disputas que no necesitan de un juicio para su adjudicación." *SLG Zapata Rivera, v. J.F. Montalvo*, supra, pág. 434.

Ante el incumplimiento de los referidos requisitos, nuestro Tribunal Supremo ha expresado:

> [N]uestro ordenamiento procesal civil, se les exige tanto al promovente como al opositor de una Moción de Sentencia Sumaria que cumplan con unos requisitos de forma específicos para que pueda considerarse su Solicitud. El incumplimiento con estos requisitos tiene repercusiones distintas para cada parte. De un lado, si el promovente de la moción incumple con los requisitos de forma, el Tribunal no estará obligado a considerar su pedido. A contrario sensu, si la parte opositora no cumple con los requisitos, el tribunal puede dictar Sentencia Sumaria a favor de la parte promovente, si procede en Derecho. *Meléndez González, et al. v. M. Cuebas*, supra, pág. 111.

Además, la parte que se opone no puede descansar exclusivamente en sus alegaciones ni tomar una actitud pasiva. *Toro Avilés v. P.R. Telephone Co.*, 117 DPR 369 (2009). Por el contrario, tiene que controvertir la prueba presentada por la parte solicitante, a fin de demostrar que sí existe controversia real sustancial sobre los hechos materiales del caso en cuestión. *González Aristud v. Hosp. Pavía*, 168 DPR 127 (2006). Por otro lado, es conocido que "[c]omo regla general, para derrotar [o sostener] una solicitud de sentencia sumaria la parte opositora debe presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente." *Ramos Pérez v. Univision P.R., Inc.*, supra, pág. 215.

Específicamente, la Regla 36.5 de Procedimiento Civil, 32 LPRA Ap. V, R.36.5, establece que: "[l]as declaraciones juradas para sostener u oponerse a la moción se basarán en el conocimiento personal del (de la)

declarante. Contendrán aquellos hechos que serían admisibles en evidencia y demostrarán afirmativamente que el(la) declarante está cualificado(a) para testificar en cuanto a su contenido." Con respecto a la interpretación de este precepto procesal, el Tribunal Supremo ha resuelto que "las declaraciones juradas que contienen solo conclusiones, sin hechos específicos que las apoyen, no tienen valor probatorio, siendo, por lo tanto, insuficientes para demostrar la existencia de lo que allí se concluye." *Ramos Pérez v. Univisión P.R., Inc.*, supra, pág. 216. Más allá de contener hechos específicos sobre los aspectos sustantivos del caso, la declaración debe incluir "hechos que establezcan que el declarante tiene conocimiento personal del asunto declarado." *Roldán Flores v. Cuebas*, 199 DPR 664, 678 (2018).

Al considerar una moción de sentencia sumaria, si la parte promovida no controvierte los hechos que presente la parte promovente, los mismos se tendrán por ciertos. *Díaz Rivera v. Srio. de Hacienda*, 168 DPR 1, 27 (2006). Así, nuestro más alta *Curia* ha aclarado que "a menos que las alegaciones contenidas en la moción de sentencia sumaria queden debidamente controvertidas, estas podrían ser admitidas y, de proceder en derecho su reclamo, podría dictarse sentencia sumaria a favor de quien promueve." *Meléndez González, et al. v. M. Cuebas*, supra, pág. 137. Sin embargo, "toda inferencia razonable que se realice a base de los hechos y documentos presentados, en apoyo y en oposición a la solicitud de que se dicte sentencia sumariamente, debe tomarse desde el punto de vista más favorable al que se opone a la misma." *ELA v. Cole*, 164 DPR 608, 626 (2005).

En lo relativo al ejercicio de la facultad revisora de este Tribunal de Apelaciones sobre la procedencia de la sentencia sumaria, debemos utilizar los mismos criterios que el Tribunal de Primera Instancia. *Meléndez González et al. v. M. Cuebas*, supra, págs. 114, 118; *Vera v. Dr. Bravo*, 161 DPR 308, 334 (2004). El Tribunal Supremo ha aclarado que el Tribunal de Apelaciones está limitado de la siguiente manera: (1) este solo puede

considerar los documentos que se presentaron ante el foro de instancia las partes no pueden añadir en apelación documentos que no fueron presentados oportunamente ante el TPI, ni pueden esgrimir teorías nuevas o asuntos que no estuvieron ante la consideración de ese foro; (2) el Tribunal de Apelaciones únicamente puede determinar la existencia de una controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó correctamente—no puede adjudicar hechos materiales y esenciales en disputa, puesto que esa tarea le corresponde al TPI. *Íd.*, págs. 334-335.

En *Meléndez González et al. v. M. Cuebas*, supra, se aclaró el estándar específico que debe utilizar este Tribunal de Apelaciones al momento de revisar denegatorias o concesiones de Mociones de Sentencia Sumaria a la luz de la jurisprudencia revisada y las Reglas de Procedimiento Civil aprobadas en 2009. Primero, el Tribunal de Apelaciones se encuentra en la misma posición del TPI al momento de revisar solicitudes de sentencia sumaria. Ello implica que, este Tribunal está regido por la Regla 36 de Procedimiento Civil, *supra,* y, por consiguiente, le aplican los mismos criterios que la jurisprudencia y la Regla 36, *supra*, le exigen al foro primario.

Segundo, por estar este foro apelativo en la misma posición que el primario, tenemos la obligación de revisar que tanto la Moción de Sentencia Sumaria como su Oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra*, según fueron pautados en *SLG Zapata-Rivera v. JF Montalvo*, supra.

Tercero, en el caso de revisión de una Sentencia dictada sumariamente, este tribunal tiene que examinar si en realidad existen hechos materiales en controversia. De haberlos, estamos compelidos a cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, *supra*, por lo que tenemos la ineludible obligación de exponer concretamente los hechos materiales que encontramos están en controversia y, de haberlos, cuáles resultan ser incontrovertidos. Esta determinación procede ser hecha en la Sentencia que disponga del caso. También estamos facultados para

hacer referencia al listado enumerado de hechos incontrovertidos que determinó el TPI.

Cuarto, de encontrar este Tribunal de Apelaciones que los hechos materiales realmente resultan ser incontrovertidos, procede entonces revisar *de novo* si el TPI aplicó correctamente el Derecho.

Toda duda sobre la existencia de una controversia de hechos *bona fide* debe ser resuelta contra la parte que solicita la sentencia sumaria. *SLG Zapata-Rivera v. J.F. Montalvo*, supra; *Córdova Dexter v. Sucesión Ferraiuoli*, 182 DPR 541, 556 (2011). Por lo tanto, al determinar si existen controversias de hechos que impiden dictar sentencia sumaria, el juzgador debe analizar los documentos que acompañan la solicitud de sentencia sumaria y los documentos incluidos con la Moción en Oposición, así como los que obren en el expediente. Dicho examen debe ser guiado por el principio de liberalidad a favor de la parte que se opone a que se dicte sentencia sumaria. *Ramos Pérez v. Univisión*, supra. De existir dudas sobre la existencia de una controversia de hechos, estas deben resolverse en contra del promovente ya que este mecanismo procesal no permite que el tribunal dirima cuestiones de credibilidad. *Mgmt. Adm. Servs. Corp. v. E.L.A.*, 152 DPR 599, 610 (2000); *Cuadrado Lugo v. Santiago Rodríguez*, 126 DPR 272, 279-280 (1990); *Corp. Presiding Bishop v. Purcell*, 117 DPR 714, 720 (1986).

**B. Cosa Juzgada**

Una sentencia que adviene final y firme constituye cosa juzgada no solo en cuanto a todo lo que se alegó y se admitió en torno a la reclamación, sino también, en cuanto a todo asunto que pudo haberse planteado, siempre y cuando haya tenido la parte la oportunidad justa de ser oída. *Comisión de los Puertos de Mayagüez v. González Freyre*, 211 DPR 579 (2023) (citando a *Marrero Rosado v. Marrero Rosado*, 178 DPR 476 (2010)). De igual modo, como general, un acuerdo tiene el efecto de cosa juzgada entre las partes. *Díaz Rodríguez v. García Neris*, 208 DPR 706 (2022).

Ahora bien, la defensa de cosa juzgada no opera de manera automática. No debe aplicarse inflexiblemente, en particular, cuando al hacerlo se desvirtúan los fines de la justicia, produce resultados absurdos o cuando se plantean consideraciones de interés público. *Meléndez v. García*, 158 DPR 77 (2002). *Pagán Hernández v. U.P.R.*, 107 DPR 720 (1978). Su presunción se activa cuando concurre la perfecta identidad de causa, cosas, partes y calidad en que lo fueron en un pleito anterior. *Ortiz Matías v. Mora Development*, 187 DPR 649 (2013). En ese sentido, el requisito de causa existe cuando los hechos y los fundamentos de las peticiones son idénticos en torno a la cuestión planteada. *Presidential v. Transcaribe*, *supra.* Al determinar si media identidad de causa de acción es necesario evaluar si ambas reclamaciones surgen de la misma transacción o núcleo de hechos. *Íd.* En cuanto a cosa, se refiere al objeto o la materia sobre la cual se ejercita la acción, aunque haya disminuido o alterado. *Íd.* En este contexto, las partes significan quienes intervienen en el proceso, a nombre y en interés propio, y quienes resultarían directamente afectados por la excepción de la cosa juzgada. *Íd.*

En armonía con lo anterior, la referida doctrina abarca la modalidad de impedimento colateral. El Tribunal Supremo de Puerto Rico establece que el impedimento colateral por sentencia "surte efecto cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y determina mediante sentencia válida y final". *Bacardí Corporation v. Torres Arroyo*, 202 DPR 1014, 1025 (2019); *A & P Gen. Contractors v. Asoc. Caná*, 110 DPR 753, 762 (1981). Esta vertiente no requiere el cumplimiento de identidad de causa. *Beníquez v. Vargas*, 184 DPR 210 (2012). No obstante, no procede su aplicación cuando: (1) la parte no ha tenido la oportunidad de litigar previamente el asunto, o (2) pudiendo haber litigado el asunto en la primera acción, éste no fue litigado o adjudicado en el pleito anterior o (3) cuando ese litigante no ha resultado ser la parte perdidosa en el pleito anterior. *Íd.*

En síntesis, el efecto de la doctrina de cosa juzgada estriba en que la sentencia dictada en un pleito anterior impide que se litiguen en un pleito posterior, entre las mismas partes, causas y cosas, lo litigado y adjudicado y aquello que pudo haber sido litigado y adjudicado en la acción anterior. *Pagán Hernández v. UPR,* 107 DPR 720 (1978).

**C.      El Contrato de Transacción**

El Art. 1207 del Código Civil de 1930, (31 LPRA ant. sec. 3372), reconoció el principio de autonomía contractual de las partes al disponer que los contratantes pueden establecer los pactos, las cláusulas y las condiciones que tengan por convenientes, siempre que no sean contrarios a las leyes, a la moral y al orden público. *Oriental Financial v. Nieves*, 172 DPR 462 (2007). En lo pertinente, el Art. 1210 del Código Civil de 1930, (31 LPRA ant. sec. 3375) dispuso que los contratos se perfeccionan por el mero consentimiento, y desde entonces obligan, no sólo al cumplimiento de lo expresamente pactado, sino que a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley.

De igual forma, el Artículo 1233 del Código Civil de 2020, recoge el principio de *pacta sunt servanda* y expresamente dispone que "lo acordado en los contratos tiene fuerza de ley entre las partes, ante sus sucesores y ante terceros en la forma que disponga la ley" 31 LPRA sec. 9754.

En lo pertinente, el Código Civil de 1930, 31 LPRA sec. 4821, definía la transacción como, un acuerdo mediante el cual las partes, dando, prometiendo o reteniendo cada una alguna cosa, evitan la provocación de un pleito o ponen término al que había comenzado. Véase además, *Municipio de San Juan v. Prof. Research*, 171 DPR 219, 238 (2007), citando a *López Tristiani v. Maldonado*, 168 DPR 838,846 (2006); Artículo 1709 del Código Civil (31 LPRA sec. 4821). De manera que, existen dos presupuestos necesarios para que se califique un contrato como transacción. *Neca Mort.Corp. v. A & W Dev. S.E.*, 137 DPR 860, 870 (1995). En primer lugar, que exista una situación de controversia entre (2) dos o más personas, y, en segundo lugar, la necesidad de recíprocas

concesiones entre ellas. *Íd.* Si luego de comenzar un pleito, las partes acuerdan eliminar la controversia y solicitan incorporar el acuerdo al proceso en curso, es un contrato judicial, el cual tiene el efecto te culminar el pleito. *Íd.*

La transacción puede ser judicial o extrajudicial. *Neca Mortg. Corp. v. A&W Dev. S.E.*, 137 DPR 860 (1995). Es judicial aquella transacción que pone fin a un pleito ya radicado. Bajo este tipo de acuerdo, las partes le informan al juez de la existencia del mismo, solicitan que se incorpore el acuerdo al proceso y se da por terminado el pleito. *Íd.* En este caso, la transacción judicial tiene el efecto de una sentencia firme y, en caso de incumplimiento, se puede pedir su ejecución por la vía de apremio o ejecución de sentencia. *Íd.*, pág. 875. Esto significa que las partes tienen que considerar los puntos discutidos como definitivamente resueltos, y no pueden volver nuevamente sobre estos. *Neca Mortg. Corp. v. A & W Dev. S.E., supra.* Al decir que la transacción judicial tiene fuerza para abrir la vía de apremio, supone que se puede pedir su ejecución como si se tratara de una sentencia firme. *Íd.*

En la transacción extrajudicial, por otro lado, las partes quieren evitar el pleito antes de que haya comenzado o, habiendo comenzado el mismo, llegan a un acuerdo sin la intervención del Tribunal y sólo le informan al juez que desisten de la causa de acción. En tal circunstancia, en caso de incumplimiento, la parte afectada tendrá que acudir al Tribunal para exigir su cumplimiento, ello ya que el contrato no formó parte de la sentencia. A esos efectos el Tribunal Supremo de Puerto Rico ha expresado:

> [E]xiste una gran diferencia en cuanto a la manera de poder llevar a la práctica lo convenido en la transacción, según que ésta sea extrajudicial o judicial. La judicial puede llevarse a efecto por los trámites de la ejecución de sentencia, mientras que la extrajudicial sólo puede hacerse cumplir cuando se haya declarado su eficacia en el juicio correspondiente. *Neca Mortg. Corp. v. A&W Dev. S.E.*, *supra*, pág. 872. Véase, además, *Citibank v. Dependable Ins. Co., Inc.*, *supra*.

Ahora bien, el incumplimiento o contravención con las condiciones de un contrato de transacción extrajudicial, produce la resolución. *Neca*

*Mort. Corp. v. A & W Dev. S.E.*, *supra*, pág. 874. No obstante, si se trata de una transacción judicial y una de las partes no cumple con lo estipulado, como regla general, no produce la resolución. *Íd.* pág. 875. En estos casos, se puede solicitar que lo convenido se lleve a efecto, pues tiene para las partes la misma fuerza que una sentencia firme, y se puede, por lo tanto, utilizar el procedimiento de apremio y pedir la ejecución. *Neca Mort. Corp. v. A& W Dev. S.E.*, *supra*, pág. 875.

La transacción debe obligatoriamente contener los requisitos de consentimiento, objeto y causa establecidos por el artículo 1231 del Código Civil. 31 LPRA §3391. El consentimiento de los contratantes se manifiesta por el acuerdo consensual entre ellos para poner fin al litigio. El objeto es poner fin a la controversia y su causa consiste en las recíprocas concesiones de las partes, pues si bien tiene el propósito de hacer desaparecer un conflicto pendiente, se diferencia de otras figuras contractuales que tienen la misma finalidad, en que ello se logra mediante renuncias mutuas. *Neca Mortg. Corp. v. A & W Dev. S.E.*, supra, a la pág. 871; *Citibank v. Dependable Ins. Co. Inc., supra*, a las págs. 512-513.

En *Sucn. Román v. Shelga Corp.,* 111 D.P.R. 782, 787 (1981), el Tribunal Supremo señaló que **aunque el contrato de transacción tenga el efecto de cosa juzgada entre las partes contratantes, éste no opera para impedir que el juzgador interprete su extensión y aplicación al pleito judicial en el que se levanta como defensa. Cuando una de las partes no cumple con lo estipulado en una transacción judicial, como regla general, no procede la resolución.** En estos casos, el perjudicado puede solicitar inmediatamente que lo convenido se lleve a efecto vía el procedimiento de apremio, pues ello tiene para las partes la misma fuerza que una sentencia firme. *Neca Mortg. Corp. v. A & W Dev. S.E., supra*, a las págs. 871- 72; *Citibank v. Dependable Ins. Co. Inc.*, supra, a las págs. 516-517; *Canino v.Santiago Bellaflores, Inc.,* 78 D.P.R. 778, 780-781 (1955).

**D.     Siembra y Remoción de Árboles**

El Art. 809 del Código Civil de Puerto Rico (31 LPRA sec. 8072) establece que no pueden plantearse árboles cerca de un predio sino a la distancia autorizada por la ley y, en su defecto, a la de dos (2) metros de la línea divisoria de los predios si se trata de árboles altos y medianos, de cincuenta (50) centímetros si se trata de arbustos y árboles pequeños. En consecuencia, el propietario puede solicitar, desde el mismo momento de la plantación, que se remuevan los árboles que se planten a menor distancia de su predio. Es decir que al amparo del Art. 809 del Código Civil, 31 LPRA sec. 8072, el perjudicado solo tiene que demostrar: que existe una colindancia y que hay árboles plantados a una distancia menor a la permitida por ley."

En lo pertinente, el Art. 810 del Código Civil de Puerto Rico provee para que **"[s]i las ramas de algunos árboles se extienden sobre un predio vecino, el dueño de este tiene derecho a reclamar que se corten en cuanto se extienden sobre su propiedad, y si son las raíces de los árboles vecinos las que se extienden en el suelo de otro, el dueño del suelo en que se introducen puede cortarlas por sí mismo dentro de su predio.** 31 LPRA sec. 8073. (Énfasis suplido).

Cónsono con lo anterior, el Artículo 800 del Código Civil de Puerto Rico, establece que el propietario de un inmueble está obligado a mantener: (a) los edificios para evitar su ruina; y (b) **los árboles y las ramas en su propiedad que amenazan caerse para evitar que causen perjuicio a una finca ajena o a los transeúntes por una vía pública o particular**. 31 LPRA sec. 8063. (Énfasis suplido). Sobre estos extremos, el Artículo 800, *supra*, enfatiza que si el propietario del inmueble incumple con esta obligación, 'cualquier persona que tenga un interés legítimo puede exigir al propietario la reparación, la demolición, el corte o la adopción de medidas preventivas' y que '[s]i el propietario no lo realiza, la autoridad puede realizarlo a su costa'. *Id.*

**E.     La Temeridad**

La Regla 44.1(d) de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1(d), dispone que: "[e]n caso que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta." La conducta que amerita la imposición de honorarios de abogado es aquella la cual haga necesario un pleito que se pudo evitar. *Andamios de P.R. v. Newport Bonding*, 179DPR 503, 520 (2010).

El propósito fundamental de la  Regla 44.1 (d) de Procedimiento Civil, 32 LPRA Ap. V., R.44.1 (d), fuente para la concesión de honorarios de abogado es el de penalizar o sancionar a aquellas partes que por su temeridad, obstinación, contumacia e insistencia en una actitud frívola o desprovista de fundamento, obligan a una parte a  asumir y sufrir las molestias, gastos, trabajo e inconveniencias de un litigio innecesario y exige al foro primario que le imponga a la parte una suma por concepto de honorarios que corresponda al grado o intensidad de tal conducta temeraria o frívola. Véase, *Corpak Inc.*, *y Art Printing*, *Inc.* v. *Ramallo Brothers Printing Inc.*, 125 DPR 724 (1990); *Vélez* v. *Bayrón Vélez*, 114 DPR 833 (1983).

Es la conducta que obliga a acudir al tribunal para reclamar algo que pudo haberse resuelto fuera del foro judicial. *Véase Fernández Mariño v. San Juan Cement*, 118 DPR 113 (1987). Una vez determinada la existencia de temeridad, la imposición del pago de honorarios de abogado es mandatoria. *Colón Santos* v. *Coop. Seg. Múlt. P.R.,* supra a la pág. 188; *Blás Toledo v. Hosp. La Guadalupe*, 146 DPR 267, 334 (1998). En consecuencia, la determinación de temeridad conlleva posteriormente la fijación de una suma razonable de honorarios. *Vega v. Luna Torres*, 126 DPR 370 374 (1990). De manera que, la imposición de honorarios de abogado y su cuantía es una determinación discrecional del tribunal sentenciador, sólo revisable ante indicios de abuso de discreción por parte del juzgador. *Colón Santos v. Coop. Seg. Múlt. P.R., supra*, pág. 188. El

monto de los honorarios los determina el tribunal a su discreción al tomar en cuenta el grado de temeridad, el trabajo realizado, la duración y naturaleza del litigio, la cuantía involucrada y el nivel profesional de los abogados. *Velázquez Ortíz v. UPR*, 128 DPR 234 (1991)

Como la imposición de honorarios de abogado descansa en la sana discreción judicial, puede ser variada en apelación si se demuestra abuso de esta. *SLG González-Figueroa v. SLG et al., supra*, pág. 150.

**III.**

Como cuestión de umbral, sostienen los apelantes en su cuarto señalamiento de error que los hechos medulares del caso fueron controvertidos y que por ello incidió el TPI al dictar sentencia sumaria a favor de la parte apelada. Los apelantes alegan que hay dos hechos específicos que presentan controversia; la ubicación del árbol con relación a la colindancia y el alegado incumplimiento de los apelantes con el "Acuerdo Privado, Confidencial y Relevo General" suscrito por las partes en el caso anterior. Sin embargo, en su sentencia el TPI basa sus conclusiones en el Informe del Biólogo del DRNA, ordenado por el tribunal en el caso de Ley 140, así como en un segundo informe presentado por el Municipio de San Juan ratificando las conclusiones del Informe del DRNA.

Al estar este Tribunal de Apelaciones en igual posición que el foro primario para determinar los hechos sobre los cuales no existe controversia, determinamos como hechos incontrovertidos los esbozados por el foro primario en la Sentencia apelada, tras declarar ha lugar la solicitud de sentencia sumaria presentada por el señor Vélez Vélez. Sobre esos extremos, concluimos que **no incidió el foro primario al adjudicar el caso ante su consideración mediante el mecanismo procesal de sentencia sumaria**, toda vez que **no hay hechos materiales en controversia que impidan su adjudicación sumaria.** En consecuencia, procedemos a evaluar la aplicación del derecho en la Sentencia apelada.

Es la contención del apelante en su **primer señalamiento de error** que incidió el foro primario al determinar que el "acuerdo privado,

confidencial y relevo general" suscrito entre las partes en el caso K DP2011-1483 no le aplica la doctrina de cosa juzgada. Como **segundo señalamiento de error** sostiene que incidió el foro primario al determinar que este incumplió con el "acuerdo privado confidencial y relevo general" suscrito entre las partes en el caso K DP2011-1483.

La doctrina vigente ha rechazado la aplicación automática de la doctrina de cosa juzgada. *Véase, S.L.G. Szendrey-Ramos v. Consejo Titulares, supra,* pág. 154; *Meléndez v. García*, *supra. Pagán Hernández v. U.P.R.*, *supra.* Como todo contrato, en el contrato de transacción, el consentimiento de los contratantes se manifiesta por el acuerdo consensual entre ellos para poner fin al litigio. El objeto es poner fin a la controversia y su causa consiste en las recíprocas concesiones de las partes, pues si bien tiene el propósito de hacer desaparecer un conflicto pendiente, se diferencia de otras figuras contractuales que tienen la misma finalidad, en que ello se logra mediante renuncias mutuas. *Véase*, *Neca Mortg. Corp. v. A & W Dev. S.E., supra,* a la pág. 871; En *Sucn. Román v. Shelga Corp., supra a* la pág. 787, el Tribunal Supremo señaló que aunque el contrato de transacción tenga el efecto de cosa juzgada entre las partes contratantes, **éste no opera para impedir que el juzgador interprete su extensión y aplicación al pleito judicial en el que se levanta como defensa**. *Neca Mortg. Corp. v. A & W Dev. S.E.*, *supra*, a las págs. 871- 72.

Es preciso destacar que los apelantes, **a cambio de la desestimación del pleito, se comprometieron a dar una suma de dinero en compensación** por daños y además, **se comprometieron a darle mantenimiento adecuado al árbol incluyendo podas realizadas por profesionales** que evitaran la repetición de los daños a la propiedad del apelado. El informe preparado y presentado por el DRN al tribunal en marzo del año 2022, tiene varias conclusiones que establecen que el compromiso contraído por los apelantes en el referido acuerdo en el que

se basa la alegación de cosa juzgada no fue cumplido a cabalidad.[16] En dicho informe el DRN concluyó en parte lo siguiente:

> Este árbol está muy **afectado estructuralmente** además de estar sobre cargado de ramas que pasan sobre la estructura residencial y terraza de los Querellados (Demandados) como **resultado de las podas inadecuadas realizadas para mantener control de su extensión hacia la propiedad del Querellante (demandante). Esto debería haberse realizado con herramientas adecuadas para evitar su mutilación, la malformación y desbalance desproporcionado actual de su copa sobre la residencia que aumenta la tensión sobre la base del tronco y sus raíces resultando en un crecimiento de raíces de anclaje más extendidas y/o profundas hacia la colindancia trasera que pudieran profundizar bastante y entrar al terreno del Querellante en respuesta al crecimiento de ramas extendidas sobre la propiedad en diferentes momentos de los pasados años.'**

> **Mantener el árbol en este lugar resultaría incrementa (sic) el riesgo de daño a vida y/o propiedad además de los gastos considerables de mantenimiento de insistir en mantener el mismo en el lugar por lo que no recomendamos que se conserve, además de estar a una distancia no permitida. Ver los artículos Núm. 800, 809,810, 811, 812 del Código Civil de 2020 de Puerto Rico, según enmendado. [17] (Énfasis suplido)**

Surge además, de la Demanda presentada por el señor Vélez Vélez ante el foro primario en el caso con designación alfanumérica K DP-2011-1483, objeto del acuerdo transaccional entre las partes, que el aquí apelado esbozó entre otras, las siguientes alegaciones, las cuales procedemos a citar expresamente:

> **8. La parte demandante en el presente caso ha realizado actos afirmativos para la solución del problema el que es continuo. Ha intentado persuadir a la parte demandada a que realice podas del árbol adecuadas, ha intentado dialogar para que el demandado, remueva el árbol en controversia y ha recurrido a los tribunales para vindicar sus derechos mediante la radicación de querellas y solicitudes al amparo de la Ley 140, más sin embargo sus esfuerzos no han rendido frutos.**

> **9. La parte demandada no ha obedecido las órdenes del Tribunal a pesar de que se le ha ordenado mantener y podar de forma adecuada el árbol en controversia**. .[18]

Sobre estos extremos, es preciso destacar que mediante el *Acuerdo Privado, Confidencial y Relevo General*" suscrito por las partes, estas, a cambio de sus respectivas prestaciones **pusieron fin al pleito objeto de**

---

[16] *Véase*, Informe del Biólogo del Departamento de Recursos Naturales y Ambientales, José I. Rivera Giboyeaux, de 24 de marzo de 2022. (Exhibit 3 ante el TPI)
[17] *Id.*
[18] **Véase a esos efectos la alegaciones número 8 y 9 de la Demanda en el caso K DP2011-1483, las cuales versan sobre el objeto y causa del acuerdo transaccional.** (Entrada Núm. 13, Anejo 3 SUMAC. TPI en el caso Núm. K DP2011-1483.

**la Demanda en el caso K DP-2011-1483.** Ahora, bien, al determinar que los apelantes incumplieron las obligaciones contraídas en el "Acuerdo Privado, Confidencial y Relevo General" suscrito por las partes, que ponía fin a los reclamos del apelado en la Demanda presentada en el caso anterior (**K DP-2011-1483)** no procede aplicar la doctrina de cosa juzgada toda vez que dichos reclamos fueron el objeto y la causa del acuerdo transaccional incumplido.[19] Por lo antes expuesto, concluimos que no incidió el TPI al denegar la solicitud de desestimación presentada por los peticionarios fundamentada en la doctrina de cosa juzgada.

Asimismo, tras examinar el informe del DRNA y la prueba documental consistente en fotos del área y de la colindancia, el foro primario entendió probado que la posición del árbol no cumple con la distancia de dos metros de la colindancia requerida por el Artículo 809 del Código Civil, y que los apelantes incumplieron con los términos del acuerdo referentes al mantenimiento del árbol, por lo que la discusión sobre la validez de acuerdos privados y confidenciales se hace innecesaria e impertinente.

Es la contención del apelante en su tercer señalamiento de error, que incidió el foro primario al imponer la suma de $1,500.00 en honorarios de abogado por temeridad. Arguye el apelante que no ha incumplido con el "acuerdo privado, confidencial y relevo general por lo que es improcedente la imposición de horarios por dicho concepto.

Ciertamente, la actitud de los apelantes de negarse a darle mantenimiento adecuado al árbol, incluyendo podas realizadas por profesionales que evitaran la repetición de los daños a la propiedad del apelado, según pactadas anteriormente, obligó al apelado a asumir las molestias, gastos y trabajo de un litigio innecesario que pudo evitarse, por lo que no incidió el foro primario al hacer una determinación de temeridad e imponer a los apelantes una suma de honorarios razonables por dicho concepto.

---

[19] *Id.*

## IV.

Por los fundamentos anteriormente expuestos, los cuales hacemos formar parte de esta Sentencia, confirmamos la Sentencia apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones